UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY M.,

                                        Plaintiff,

v.                                                              8:20-cv-1594 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

SCHNEIDER & PALCSIK                       MARK A. SCHNIEDER, ESQ.
  *Counsel for Plaintiff*
57 Court Street
Plattsburgh, NY 12901

SOCIAL SECURITY ADMINISTRATION            AMELIA STEWART, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Mary M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties filed briefs.  (Dkt. Nos. 13, 16.)  Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate

Judge.  (Dkt. Nos. 4, 5.)  For the reasons discussed below, the Commissioner's decision denying

Plaintiff benefits is affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1995 and completed one year of college.  (T. at 203, 230.[1])  She has

minimal work experience as a nursing home "sitter," home health aide, and waitress.  *Id.* at 53-

55, 230.  She stopped working in July of 2018, when she was laid off.  *Id.* at 54.

Plaintiff filed for DIB and SSI on April 18, 2019, claiming a disability onset date of June

1, 2018.  *Id*. at 203, 207.  She alleged the following disabilities: generalized anxiety disorder and

depression.  *Id.* at 229.  The Commissioner denied Plaintiff's initial application and maintained

the denial after reconsideration.  *Id.* at 74, 87, 99, 112.  She then requested a hearing before an

Administrative Law Judge ("ALJ").  *Id.* at 160-61.  ALJ Arthur Patane held a hearing on July 15,

2020, and Plaintiff testified.  *Id.* at 50-63.  No vocational expert ("VE") testified at the hearing.

*See id.*  However, the ALJ obtained the professional opinion of VE Margaret Heck ("Heck") via

interrogatories, and Plaintiff submitted interrogatories from VE Salvatore Garozzo ("Garozzo").

*Id.* at 383-87, 396, 407-12.  The ALJ denied Plaintiff's claim for benefits on September 3, 2020,

and the Appeals Council denied Plaintiff's request for review on December 15, 2020.  *Id.* at 1-6,

15-29.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
Page references to other documents identified by docket number are to the page numbers
assigned by the Court's CM/ECF electronic filing system.

## II.      RELEVANT LEGAL STANDARDS

### A.      Standard for Benefits

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2]  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g., Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

### B.      Standards for ALJ Evaluation of Mental Health Listings

At step three of the sequential evaluation, the ALJ must determine whether the individual's severe impairment meets or equals the criteria of any impairment listed in Appendix 1 of the regulations ("listings").  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d); *see* 20 C.F.R. § 404 Subpt. P, App. 1.  If an individual's impairment, or combination of impairments, matches the requirements of the relevant listing, then the individual is disabled.  *Id.* §§ 404.1520(d), 416.920(d).  To meet a listing, the individual's impairment "must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original).

At issue are listings 12.04, 12.06, and 12.15.  Plaintiff has the burden of showing that she meets the requirements of paragraphs A and B together, or the requirements of paragraph C. 20 C.F.R. § 404 Subpt. P, App. 1, 12.04, 12.06.  To meet the paragraph B criteria, the individual must demonstrate marked limitation in at least two of the following domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).  To meet "paragraph C" criteria, the

4

individual must present a "medically documented history of the existence of the disorder over a period of at least 2 years," with both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder," and "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04(C), 12.06(C).

### C.   Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings ("SSR"), including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions

---

[3] Plaintiff's applications were dated April 18, 2019.  (T. at 203, 207.)  Thus, the new regulations apply in his case.

are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.     Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and

the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (summary order) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

[5] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms;  (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms;  (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*; *see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his September 3, 2020, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. at 15-29.)  First, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2020, and she had not engaged in substantial gainful activity since the alleged onset date of June 1, 2018.  *Id.* at 17.  The ALJ next determined Plaintiff has the following severe impairments: "depressive disorder, anxiety disorders and obesity."  *Id.*  ALJ Patane then determined Plaintiff does not have an impairment or combination of impairments meeting or

medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id.* at 18-19.

The ALJ next found, based on the above-stated impairments, Plaintiff "has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: can have occasional interaction with coworkers and the public; and frequent interactions with supervisors."  *Id.* at 19.  Based upon this RFC and the VE reports through interrogatory responses, the ALJ determined Plaintiff can perform work at jobs existing in significant numbers in the national economy.  *Id.* at 27-28.  Thus, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2018, through the date of the ALJ's decision.  *Id.* at 28-29.

## IV.     THE PARTIES' CONTENTIONS

Plaintiff contends she met Listings 12.04, 12.06, and 12.15, and the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly evaluate Plaintiff's symptoms; (2) fails to properly evaluate the opinion evidence; and (3) errs at step five by failing to show there are jobs available Plaintiff could perform in the national economy in significant numbers.  (Dkt. No. 13 at 18-29.)  In response, the Commissioner contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence.  (Dkt. No. 16 at 4-24.)

## V.      THE COURT'S ANALYSIS

### A.     Substantial Evidence Supports the ALJ's Determination that Plaintiff Did Not Meet a Mental Health Listing

At step three of the sequential analysis, the ALJ found that Plaintiff's mental conditions did not meet the criteria for listings 12.04 or 12.06.  (T. at 18-19.)  In determining whether Plaintiff met the paragraph B criteria, the ALJ concluded, based upon substantial evidence on the record, that Plaintiff had a mild limitation in the domain of understanding, remembering, and

applying information; a moderate limitation in interacting with others; a moderate limitation in maintaining concentration, persistence, or pace; and a mild limitation in adapting or managing herself. *Id.* In making this finding, the ALJ relied on evidence of Plaintiff's wide range of daily activities including preparing simple meals, shopping, driving, playing video games, attending medical appointments, spending time with friends and family, and using public transportation. *Id*; *see also id.* at 258-61. The ALJ further considered the medical records which showed Plaintiff generally appeared "pleasant and cooperative" albeit anxious at times, with a normal mood and affect in examinations, interacted well with non-medical staff, and failed to show memory loss, distractibility, or temper control problems in examinations. *Id.* at 18-19; *see also id.* at 555, 564, 576, 798, 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888. This record evidence supports the ALJ's paragraph B findings. *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y. Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported ALJ's paragraph B analysis of no more than moderate limitation in any domain).

The ALJ also determined that Plaintiff did not meet the Paragraph C criteria, explaining that her impairments had not "resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment" would cause her to decompensate. (T. at 19.) As the ALJ had pointed out in his paragraph B analysis, Plaintiff's treatment records showed that she had largely normal examination findings, that she lived independently, and that she performed wide-ranging daily activities, like driving a vehicle, attending appointments, and shopping for groceries without decompensation. *Id.* at 18-19; *see also id.* at 258-61, 555, 564,

576, 798, 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888.  The ALJ further explained that Plaintiff "never had a history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* at 19.  Plaintiff never required inpatient psychiatric hospitalization or ongoing treatment beyond therapy and medication.  *See id.* at 686 (Plaintiff denying any inpatient psychiatric hospitalization in May 2019 consultative examination), 807 (treating provider noting in June 2020 that Plaintiff's treatment consisted of only medication management and therapy).  While Plaintiff did present to the emergency room at Canton-Potsdam Hospital for anxiety on January 28, 2019, she was not admitted and instead discharged that same day with a diagnosis of generalized anxiety disorder and instructed to follow up with her primary care provider.  *Id.* at 418-28.

Thus, the ALJ properly concluded that Plaintiff did not meet the Paragraph C criteria. *See Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019) (finding "no reasonable fact finder could have found that plaintiff had marginal adjustment" as examinations showed largely intact functioning, plaintiff had never "been hospitalized for a mental episode," and he could complete daily activities, like attend college classes, drive a vehicle, "prepare simple meals, socialize with a few close friends," and "care for his cat").

Plaintiff argues she meets listings 12.04, 12.06, and 12.15 based on the opinions of treating Psychiatric Nurse Practitioner Crista Hackney ("NP Hackney") and state agency consultant, Brett T. Hartman, Psy. D. ("Dr. Hartman").  (Dkt. No. 13 at 26-27.)  However, Plaintiff has the burden of proof to explain how these opinions undermine the ALJ's determination that she does not meet the listings, and she does not do so.  *Robert L. v. Saul*,

8:19-CV-415 (MAD), 2020 WL 1689886, at *10 (N.D.N.Y. Apr. 7, 2020).  Moreover, the ALJ

correctly rejected these opinions insofar as they suggested any marked limitation in any of the

paragraph B criteria.  (T.at 25, 26.)  Although NP Hackney's report arguably suggests Plaintiff

met the paragraph C criteria based on her conclusory check-the-box statement that Plaintiff had

a "minimal capacity to adapt to changes" or demands outside of her normal life, *id.* at. 812, the

ALJ noted NP Hackney failed to support her conclusions with any explanations.  *Id.* at. 26; *see*

*also id.* at 807-12.  The record also does not support NP Hackney's opinion, given Plaintiff's

independent ability to complete daily activities and lack of treatment in a highly structured

setting.  *See, e.g., id.* at 256-61, 563-65, 581-83, 687, 807; *Gabriel C..*, 2019 WL 4466983, at

*8.

Plaintiff also argues that her mental condition meets listing 12.15 for post-traumatic

stress disorder ("PTSD").  (Dkt. No. 13 at 27.)  However, the ALJ did not evaluate this listing

because he did not find Plaintiff had a medically determinable impairment of PTSD.  (*See* T. at

17.)  Plaintiff does not dispute the ALJ's conclusion that her PTSD was not a medically

determinable impairment; as such, the Court finds Plaintiff has waived this argument.  *See*

*Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also* N.D.N.Y. General Order 18 at ¶ C

(1) D ("The issues before the Court are limited to the issues properly raised in the briefs.").

Moreover, Plaintiff did not claim PTSD in her application for benefits as a condition that limited

her ability to work.  (T. at 229.)  Even if Plaintiff's PTSD were a medically determinable

impairment and required a listing analysis, she fails to meet listing 12.15 since the record

evidence supports the ALJ's findings that her other conditions did not meet the requirements for

listings 12.04 and 12.06, which contain identical paragraph B and C criteria to listing 12.15.

*Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Secs. 12.04(B), (C), 12.06(B), (C); *with* 12.15(B), (C).

Accordingly, the Court finds no error in the ALJ's determination that Plaintiff did not meet any mental health listing.

### B.   Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC Determination

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved

conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole).  Considering the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and her activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.

### 1.      The ALJ's RFC Properly Considered the Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate the opinions of treating NP Hackney and state agency consultant, Dr. Hartman.  (Dkt. No. 13 at 23-26.)  For the following reasons, the Court disagrees.

The ALJ considered all the treatment records, including NP Hackney's encounter notes. (T. at 21-25.)  He also considered the June 19, 2020, "Mental Impairment Questionnaire" of NP Hackney, who opined Plaintiff had none-mild limitations in understanding and remembering information; and moderate limitations in applying information, interacting with others, concentrating, persisting, maintaining pace, and adapting and managing oneself in a workplace. *Id.* at 26-27, 811.  NP Hackney further opined Plaintiff had generally "limited but satisfactory" abilities in most tasks required of unskilled, semi-skilled, or skilled work, and in interacting with the general public and maintaining socially appropriate behavior.  *Id.* at 809-10.  However, NP Hackney also opined Plaintiff had a "seriously limited" ability to perform some tasks, including

dealing with work stress, using public transportation, traveling to unfamiliar places, and maintaining concentration, and that she was "unable to meet competitive standards" in completing a normal workday without interruption from symptoms.  *Id.*  NP Hackney lastly opined Plaintiff would be absent from work more than four days per month, and that she had a "minimal capacity to adapt to changes" or demands outside of her normal life.  *Id.* at 812.

The ALJ found NP Hackney's opinion "partially persuasive concerning mild to moderate limitations of function," which he found consistent with the record as a whole and Dr. Hartman's examination.  *Id.* at 26-27.  However, he explained that NP Hackney's more extreme opinions were not consistent with the record because "treatment records fail to reveal the type of significant clinical abnormalities one would expect if the claimant were in fact disabled."  *Id.* at 27; *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Indeed, as the ALJ noted earlier in his decision, NP Hackney's mental status examinations conducted throughout 2019 and 2020 showed largely normal findings.  *See id.* at 23-25, 555, 564, 576, 798, 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888.  In assessing the support for the opinion, the ALJ pointed out that NP Hackney's opinions lacked support and appeared "conclusory," as she offered "very little explanation of the evidence relied on in forming [her] opinion."  *Id.* at 26; *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Instead of relying on clinical findings, the ALJ noted that NP Hackney relied "quite heavily on [Plaintiff's] subjective reports."  *Id.*; *see Knighton v. Astrue*, 861 F. Supp. 2d 59, 68 (N.D.N.Y. 2012) ("Subjective symptomatology by itself cannot be the basis for a finding of disability.").  While Courts routinely recognize that subjective symptoms are helpful in forming a mental health diagnosis, subjective statements alone cannot support a finding of disability.  *Id.*; *see Showers v. Colvin*, No. 3:13-CV-1147 GLS, 2015 WL 1383819, at *8 n.18

(N.D.N.Y. Mar. 25, 2015) ("There is nothing amiss about an acceptable medical source relying on subjective symptoms to form a *diagnosis* . . . .") (emphasis in original).

The ALJ correctly pointed out that such statements, without objective examination findings to bear them out, do not support NP Hackney's extreme opinions. *Cuenca v. Comm'r of Soc. Sec.*, No. 3:14-CV-0859 (GTS/WBC), 2016 WL 2865726, at *9 (N.D.N.Y. Apr. 19, 2016), *rep. & rec. adopted sub nom. Cuenca v. Colvin*, 2016 WL 2858858 (N.D.N.Y. May 16, 2016) (opinion properly discounted because it was not supported by the objective medical evidence in the record, including the provider's benign findings, and because it was based on the plaintiff's subjective complaints). Thus, the Court finds the ALJ properly evaluated NP Hackney's opinions because contrary to Plaintiff's claim that NP Hackney "relied primarily on her clinical examinations," (Dkt. No. 13 at 23), NP Hackney offered no clinical or examination findings in her source statement – such as those from a mental status exam – to support her restrictive opinions. (T. at 807-08, 810.) As noted above, the examinations by NP Hackney and Carmen Chroback, LCSW, of the same practice as NP Hackney, from 2019 and 2020 showed largely normal findings. *See id.* at 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888. Moreover, the mental status examination of Plaintiff by her primary care providers ("PCP") at Alice Hyde Medical Center were largely normal. *Id.* at 555, 564, 576, 798. Plaintiff herself reported in a depression screening questionnaire to her PCP that she was "not at all" having symptoms of depression, and it was "not difficult at all" "for [her] to do [her] work, take care of things at home, or get along with other people." *Id.* at 804. NP Hackney's more restrictive opinions are not consistent with other evidence in the record, nor are those opinions supported by any explanation from NP Hackney or by her treatment notes concerning Plaintiff.

The ALJ also considered the consultative opinion of Dr. Hartman, *id.* at 25-26, and found his opinions "generally persuasive." *Id.* at 25. Dr. Hartman's examination showed Plaintiff appeared cooperative and well-groomed with an intact memory, a coherent and goal-directed thought process, mildly impaired concentration and attention, below average cognitive ability, fair-to-poor insight, and fair judgment despite her crying, restless, and agitated behavior. *Id.* at 687-88. After an examination of Plaintiff, Dr. Hartman opined she could understand, remember, and carry out simple instructions, and maintain an awareness of hazards. *Id.* at 689. He found Plaintiff had mild difficulties in remembering, understanding, and applying complex instructions; sustaining an ordinary routine; and maintaining personal hygiene; moderate difficulty using reason and judgment, and maintaining concentration; and marked difficulty interacting adequately with others and regulating her emotions. *Id.* at 689.

However, the ALJ found Dr. Hartman's opinion that Plaintiff had marked limitations in social interactions was inconsistent with the record, including Plaintiff's statements about visiting with family and with a friend each week. *Id.* at 25, 689, 820, 874; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

The Court, in reviewing the medical opinions and the ALJ's treatment of the opinions, finds the ALJ properly addressed the "most important" factors of consistency and supportability regarding the opinions of Dr. Hartman and NP Hackney. *See* 20 C.F.R. §§ 404.1520c(c)(3), (4); 416.920c(c)(3), (4). Regarding consistency, the ALJ pointed out that Dr. Hartman's and NP Hackney's more extreme opinions appeared inconsistent with the record, such as normal mental status examination findings and Plaintiff's activities. (T. at 25, 26-27.) In terms of

supportability, the ALJ noted NP Hackney failed to support her opinions with objective findings, but that Dr. Hartman's own examination supported conclusions of mild-to-moderate limitations. *Id.* at 25, 26. Thus, the Court finds the ALJ properly evaluated these opinions.

The Court also finds Plaintiff's argument that the ALJ did not evaluate other factors, including specialization or relationship to the individual, to be without merit. (Dkt. No. 13 at 24). The ALJ was not required to explain how he considered those factors in the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("We *may*, but are not required to, explain how we considered the factors" of specialization, relationship, and other factors in evaluating opinions.) (emphasis added). Moreover, the ALJ explicitly considered these factors in his decision, noting that NP Hackney was Plaintiff's "treating psychiatric nurse practitioner" and detailing many of her examinations, and that Dr. Hartman was an "examining physician" with specific program knowledge. (T. at 25, 26.)

In short, the Court finds the ALJ correctly evaluated the opinion evidence of record and considered it along with all the evidence such that substantial evidence supports the ALJ's decision. The ALJ properly relied on all the evidence including Dr. Hartman's examination which showed mostly intact clinical findings, NP Hackney's mostly unremarkable clinical examination findings from 2019 to 2020, the primarily normal psychiatric findings of Plaintiff's PCP, and Plaintiff's various activities. *Id.* at 258-61, 555, 564, 576, 687-89, 798, 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888.

    2.    **The ALJ's RFC Properly Considered Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ erred in rejecting Plaintiff's "credibility." (Dkt. No. 13 at 18.) As noted above, the ALJ must take the plaintiff's reports of pain and other symptoms into account in evaluating a Plaintiff's RFC. *Genier v. Astrue*, 606 F.3d at 49. In evaluating Plaintiff's symptoms here, the Court finds the ALJ properly considered Plaintiff's subjective complaints and evaluated her symptoms in accordance with proper legal standards and the determination is supported by substantial evidence.

The ALJ considered Plaintiff's allegations that she could not work due to panic attacks, low energy, compulsions, and interpersonal difficulties; that she spent all day in bed and rarely went out; and that she did not have the energy to cook or clean. (T. at 20-21, 55-57, 59-60, 256-65). The ALJ found that Plaintiff's depressive disorder and anxiety disorders could reasonably be expected to produce her symptoms. *Id.* at 21; *see* 20 C.F.R. §§ 404.1529(b), 416.929(b). However, the ALJ also found Plaintiff's alleged symptoms and reported limitations did not appear "substantiated or corroborated by the evidence of record." *Id.*; *see* 20 C.F.R. §§ 404.1529(a), 416.929(a).

The Court agrees that the objective clinical findings do not support Plaintiff's description of her limitations. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms."). Although she sometimes appeared anxious in examinations, Plaintiff often appeared "attentive, communicative, casually groomed," with "no apparent signs of hallucinations, delusions or bizarre behaviors," "logical thinking, intact cognitive functioning, intact memory skills, no signs of attentional difficulties and no behavioral abnormalities." (T. at 823-24, 827, 848.) As previously noted, the records

show that throughout 2019 and 2020, mental status examinations performed by Plaintiff's psychological provider, NP Hackney, resulted in largely intact findings.  *See id.* at 818, 821, 823, 827, 832, 838, 841, 843, 848-49, 852, 854, 857-58, 860, 863, 865, 868, 871-72, 874, 878, 881, 882-83, 885, 888) (examinations from September 2019 through June 2020 showing Plaintiff appeared attentive, communicative, and casually groomed with intact cognitive abilities, logical thinking, intact memory with no attentional difficulties, and no gross behavioral abnormalities despite depressed or anxious mood).

Moreover, the record also shows Plaintiff could "perform more than a wide range of adequate activities of daily living" despite her complaints.  *Id.* at 27; *see* 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i) ("Factors relevant to your symptoms" include "[y]our daily activities").  Plaintiff acknowledged she could prepare simple meals, shop, drive a vehicle, care for her cats, watch television and play video games for fun, attend medical appointments, and spend time with friends and family.  (T. at 256-62.)  Despite her reports of trouble interacting with others, Plaintiff told consultative examiner Dr. Hartman that she spent time with a friend about once per week.  *Id.* at 689 (Plaintiff stating that she has "one friend whom she sees about once per week.").  Plaintiff indicated in her function report that she sees her family and her friend weekly.  *Id.* at 260.  The ALJ noted that "[a]lthough [Plaintiff] reported performing minimal cleaning and no energy to perform tasks, treatment records documented that she . . . spent a lot of time cleaning and performing organization rituals."  *Id.* at 27; *see, e.g., id.* at 731 (Plaintiff reporting on August 29, 2019, that she washed all her clothes after seeing mouse droppings in her closet), 857 (Plaintiff reporting to providers on January 6, 2020, that she "spends a lot of time on cleaning and organizational rituals").

Plaintiff's other activities were likewise inconsistent with her allegations of disabling mental health impairments, including Plaintiff's report that she spent time with family visiting from Illinois in August 2019, which she found "fun" but "a bit overwhelming." *Id.* at 820; 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence."). The ALJ also noted that, in August 2019, Plaintiff was embarrassed when driving to her sister's house for a party. (T. at 23, 731 (August 2019 meeting with providers where Plaintiff stated, "she drove her sister to a party" and experienced anxiety).) While the record did not indicate Plaintiff actually attended the party, and rather only drove her sister there, this does not undermine the ALJ's evaluation of symptoms because, considering her largely normal examination findings and other wide-ranging daily activities, he properly discounted Plaintiff's allegations overall. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010) (summary order) ("Although plaintiff points to a handful of purported inaccuracies in the ALJ's description of plaintiff's activities, none of these inaccuracies cut against, or have any bearing on, the ALJ's ultimate conclusion with respect to plaintiff's credibility.").

For example, the ALJ noted that, in November 2019, Plaintiff told NP Hackney she had attended two thanksgivings and "[t]hey went better than expected . . . ." (T. at 24, 848.) In March 2020, Plaintiff "went to visit [a] niece" who had undergone surgery and Plaintiff reported she "did fairly well even with all of the stress." *Id.* at 874. In June 2020, Plaintiff told her providers that she had "decided to go help her brother in Chicago for a month," and was excited to go. *Id.* at 887. Although Plaintiff argues she never actually traveled to Chicago, (Dkt. No. 13 at 22), the ALJ's consideration of her report that she was "excited to go," is relevant to her

overall mental functioning.  (T. at 25.)

Therefore, the Court finds no error with the ALJ's determination that Plaintiff's largely normal examinations and wide-ranging daily activities did not support her subjective complaints of disabling mental health limitations.  *Id.* at 21, 27; *see Mideczky v. Colvin*, No. 5:15-CV-0531 (GTS), 2016 WL 4402031, at *10 (N.D.N.Y. Aug. 18, 2016) (finding ALJ properly discounted plaintiff's allegations of mental limitations given "[p]laintiff's normal mental status examinations and broad range of daily activities," including her ability to "prepare simple meals, perform some cleaning, go shopping, watch television," and "drive a motor vehicle").

While Plaintiff argues the record contains no evidence at all that contradicts her testimony and that the ALJ "cherry-picked" evidence in evaluating Plaintiff's symptoms, (Dkt. No. 13 at 21), the Court disagrees, and finds the ALJ appropriately determined her complaints were inconsistent with her activities and mental health examination findings as noted in the record.  *See* SSR 16-3p, 2017 WL 5180304, at *8.  The "ALJ 'is not required to accept the claimant's subjective complaints without question,'" rather, he has the responsibility to analyze Plaintiff's subjective complaints considering the record as a whole.  *Landis P. v. Comm'r of Soc. Sec.*, No. 8:17-CV-681, 2020 WL 2770434, at *14 (N.D.N.Y. May 28, 2020) ("The ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record.'") (citing *Barry*, 606 F. App'x at 622-23).

The ALJ properly summarized the evidence in stating that Plaintiff "visited with family," given her explicit reports that she spent time with visiting family from Illinois and visited her niece in Burlington.  (T. at 23, 820, 874.)  The ALJ did not err in noting that Plaintiff "regularly visited with a friend weekly" in discussing Dr. Hartman's opinion, as Dr. Hartman noted she

"has one friend whom she sees about once per week." *Id.* at 25, 689.

The Court also finds no merit to Plaintiff's contention that the ALJ failed to develop the record because he did not ask her about her travel plans and other activities at the hearing. (Dkt. No. 13 at 22-23.) Plaintiff provides no support for her allegation there were "inconsistencies" about her daily activities that the ALJ should have inquired into more deeply at the hearing. *See id*. Moreover, Plaintiff was represented by counsel at the hearing, yet she offered no testimony about those activities, nor did her attorney inquire about them. (T. at 57-62.) *See Allen v. Comm'r of Soc. Sec.*, No. 1:16-CV-00273 (MAT), 2017 WL 604421, at *5 (W.D.N.Y. Feb. 15, 2017) (noting "although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision  – and later fault the ALJ for not performing a more exhaustive investigation.") (citing *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)).

In sum, Plaintiff's challenges to the ALJ's RFC determination regarding the opinion evidence and her subjective complaints are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc*. Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep. & rec. adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp.

126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination is supported by substantial evidence.

### C.    The ALJ Met His Burden at Step Five

There is only a limited burden shift at step five to the Commissioner.  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012) (At step five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."); *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (At step five, "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform"); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a VE. *McIntyre*, 758 F.3d at 151.  An ALJ may rely on a VE's testimony regarding a hypothetical if "there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion," *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

Here, Plaintiff argues the RFC is wrong regarding Plaintiff's nonexertional mental limitations.  (Dkt. No. 13 at 26.)  However, as noted above, this Court finds the ALJ's RFC determination is supported by substantial evidence.  Next, Plaintiff argues the Commissioner did

not meet his burden at step five to show there are jobs in significant numbers in the national economy available Plaintiff could do within her RFC. *Id.* The Court finds this argument lacks merit.

The ALJ obtained the professional opinion of VE Heck by propounding interrogatories to her. (T. at 393-87, 396.) In response to a hypothetical interrogatory incorporating the RFC, VE Heck opined Plaintiff could perform the light duty jobs of silverware wrapper, housekeeper, and marking clerk, all of which were available in significant numbers in the national economy. *Id.* at 386. In response, Plaintiff obtained the opinion of VE Garozzo, by proposing further interrogatories regarding the jobs identified by Heck. *Id.* at 409-16. Garozzo opined the jobs of silverware wrapper and marking clerk would not be available because the jobs involved more than occasional interaction with co-workers and the public. *Id.* at 411-12.

Plaintiff does not argue the hypothetical to Heck was improper other than to assert the RFC is incorrect which, as noted, the Court finds to be properly supported. Rather, Plaintiff asserts the opinion of Garozzo is more reliable than the opinion of Heck. (Dkt. No. 13 at 28-29.) However, it is not the Court's function to reweigh the evidence that was before the ALJ. *Vincent*, 830 F. Supp. at 133. Furthermore, both Heck and Garozzo opined Plaintiff could perform the housekeeper position, and Garozzo noted that approximately 50% of the housekeeper positions are performed after normal work hours and away from the public. (T. at 384, 396, 411, 412.) Heck noted that at least 110,129 housekeeper positions exist in the national economy, *id.* at 384, and Garozzo did not dispute that overall number. *Id.* at 411-12. Jobs in the national economy in the amount of 110,129 is a significant number, *see, e.g., Dumas*, 712 F.2d at 1549; hence, the Commissioner's step five limited burden is satisfied. Accordingly, the hypothetical to VE Heck was proper and significant jobs are available to Plaintiff in the national

economy within her functional capacity.  Therefore, the Court finds the ALJ's determination at step five was proper and is supported by substantial evidence.

## VI.    CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports his decision.  Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.

Dated:  March 17, 2022
        Syracuse, New York

                                          Thérèse Wiley Dancks
                                          United States Magistrate Judge